## Brauner v. Leutz.

Feb. 26, 1943.

Woodward, Dawson & Hobson, and Leibson & Leibson for appellant.

Robert L. Page for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to July 18, 1940, appellee and defendant below, Joseph N. Leutz, was a resident of Louisville, Kentucky, and a building contractor; whilst appellant and plaintiff below, John Brauner, was a painter, and took contracts for such work. A Mrs. Walker, residing on Walker's Lane, in Jefferson County, concluded to erect a residence on her property, to be veneered with brick, and employed an architect to draw plans therefor, with power and authority to let contracts for its construction. Defendant obtained the contract for the necessary carpenter's work for the building; whilst plaintiff obtained the contract for the painting of it.

On July 18, 1940, defendant, with one of his employed servants, was engaged in putting on the cornice on one side of the building and had constructed a scaffold upon which to stand while engaged in that work. The scaffold was attached to the sheeting on that side of the building against which the veneered brick outside

surface was to be placed. Plaintiff had theretofore been engaged in doing some painting on the inside of the building, but he concluded on the morning of that day to prime the cornice behind the carpenters as they finished it, and he asked and obtained their permission to use the scaffold upon which to stand while doing his priming. Shortly after entering upon the scaffold it collapsed by pulling loose from the wall to which it was attached, thereby precipitating plaintiff and the carpenters thereon to the ground, resulting in more or less severe injuries sustained by plaintiff.

On July 15, 1941 (lacking only three days of one year from the time of the accident, after which limitation would accrue) plaintiff filed this action in the Jefferson circuit court against defendant to recover damages for his injuries, which he placed at $5,000. The negligence charged in the petition as amended was, that defendant was negligent by failing to secure the attachment of the scaffold to the wall of the house, causing it to pull loose and fall, which was the proximate cause of plaintiff's injuries.

The court overruled defendant's demurrer to the petition as amended, followed by his answer containing in its first paragraph a denial of the charges made in the petition; in its second paragraph a plea of contributory negligence was made; and in the third one defendant averred that the scaffold was erected solely for the use and benefit of himself and his employes in doing the carpenters' work on the building, and that plaintiff entered upon the scaffold at his own request and volition, and for his sole benefit as an independent contractor to do the painting on the building, and with which defendant had nothing to do, nor did he derive any benefit therefrom. A reply completed the issues, and upon trial after evidence heard the court sustained defendant's motion for a peremptory instruction in his favor, which was followed by a verdict to that effect, and a judgment dismissing the petition was entered, to reverse which plaintiff prosecutes this appeal.

The testimony showed without contradiction that the attachment of the scaffold to the wall of the building was made and done in the usual way by the use of nails of the proper length driven into the studdings to which the sheeting was nailed. Nevertheless the scaffold, with the additional weight of plaintiff on it, pulled loose

and fell, as described, and the doctrine of res ipsa loquitor is relied on by plaintiff's counsel to establish the negligence relied on. However, under our conception of the case, we need devote neither time nor space in determining whether the facts justify the application of that doctrine, since if it should be admitted that the facts called for its application the utmost effect would be the establishment of negligence on the part of defendant. But before negligence may give rise to a cause of action in favor of the one who is injured thereby there should first exist a duty on the part of the negligent one toward the injured one before liability attaches therefor, since actionable negligence is based upon the violation of duty owed to the injured person by the negligent one. Therefore, the inquiry in this case is—whether or not defendant at the time of plaintiff's injury was under any duty to the latter to exercise any care for his safety, or to provide him a reasonably safe place to work in the performance of his wholly independent painting contract?

Plaintiff's counsel seek to sustain their client's right to maintain the action, under the facts we have narrated, upon the ground of prevailing custom or usage, for independent contractors to appropriate the facilities of other independent contractors, on the same building, and that because thereof defendant owed plaintiff the duty to construct and maintain the scaffold in a reasonably safe condition for his occupancy as a licensee of defendant. In the first place no such custom is pleaded by plaintiff, which the law requires should be done before reliance may be had upon it. Eagle Distilling Co. v. McFarland, 14 Ky. Law Rep. 860, a Superior Court case; Mowbray & Robinson Co. v. Kelley, 170 Ky. 271, 185 S. W. 1130; Bender v. South, 189 Ky. 623, 225 S. W. 504, and Brumfield v. Consolidated Coach Corporation, 240 Ky. 1, 40 S. W. (2d) 356. Such required pleading is particularly true with reference to a local custom or usage affecting the rights of the parties, and which was the one attempted to be established in this case.

However, if no objection existed, with reference to the custom and usage sought to be relied on then the only effect that could be given to it if alleged and proved would be the granting of a license to the licensee to occupy and temporarily appropriate the place where he was, at the time of receiving the injuries of which he

complains, since the consent or permission of the licensor need not be made or given on the particular occasion when the accident was sustained by the licensee—although in this case plaintiff did procure simultaneous consent of defendant to occupy the scaffold in question for the purpose of employing it as an instrumentality by which he could perform his independent contract with the owner of the building.

We, therefore, have an unvarnished and unqualified case of the status of licensor and licensee with the question of liability of the former to the latter for alleged negligence resulting in injury to him. It should also be kept in mind that the case involves no question growing out of the relationship of "Master and Servant," since plaintiff was not the servant of defendant, nor was the latter his master. Neither do the facts prove the relationship of invitor and invitee between defendant and plaintiff, since in order to create that relation the invitee must go upon and appropriate the premises or the facilities of the invitor by and through which some benefit is received by the latter. In `other words, the mission of the invitee should be for the mutual benefit of both parties. There is no contention in this case that defendant either expressly or constructively invited plaintiff to occupy the scaffold on the occasion he was injured, and the urged custom of plaintiff's attorney did not, as we have seen, contribute towards altering or converting the relationship of licensor and licensee into that of invitor and invitee. Therefore, it will be unnecessary to discuss either the relationship of master and servant, or that of invitor and invitee, since the only status of the parties in this case is that of licensor and licensee.

The doctrine appears to be universal that a licensor owes no duty to a licensee to provide safe places or premises for the occupancy or use of his licensee, save and except to abstain from doing any intentional, wilful (and in some jurisdictions gross reckless) act endangering the safety of the licensee. Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S. E. 813, 38 A. L. R. 391. A highly reliable sample of text authorities to that effect is found in 38 Am. Jur. beginning on page 765, section 104. The immediately preceding text deals with care required of an invitor to his invitee. It is also shown in the text referred to that the same rule measuring the liability of a

licensor to a licensee on any part of the licensor's premises applies to the use of installations by one independent contractor to another one in the accomplishment of the same general purpose and to the servants of the latter. So that, in this case the premises or facilities, alleged to be defectively constructive—and to the appropriation of which plaintiff was granted a license—was one which the licensor had constructed, solely for his use and benefit; whilst plaintiff was, under his contract, to furnish his own facilities in the discharge and performance of his painting contract. The rule of the text, supra, has been thoroughly established in this jurisdiction by numerous and unanimous opinions of this court, some of the latest of which are, Wall v. F. W. Woolworth Co., 209 Ky. 258, 272 S. W. 730; Lewis v. Lerman Bros., 277 Ky. 334, 126 S. W. (2d) 461, and Baird v. Goldberg, 283 Ky. 558, 142 S. W. (2d) 120, 122. The opinions in those cases cite and refer to other sustaining prior ones, and in which the line separating the duties of an invitor to his invitee, and those relating to the same duties as between licensor and licensee is made, and which distinction is as we have above stated. As a sample of the prevailing rule in this jurisdiction as to licensees, we insert an excerpt from our latest Baird case, supra, saying: "It is not necessary for us to determine whether or not the plaintiff was guilty of contributory negligence as a matter of law, since we have reached the conclusion that he was a mere licensee, therefore the only duty owed him by defendant, Goldberg, was not to injure him wilfully or wantonly, or to express it in another way, not to injure him through active negligence. 45 C. J. 796, Sec. 201; Indian Refining Co. v. Mobley [134 Ky. 822, 121 S. W. 657, 24 L. R. A., N. S., 497], Cummings' Adm'x v. Paducah Grain & Elevator Co. [190 Ky. 70, 226 S. W. 345] supra."

The limited liability and duty of a licensor to his licensee, as declared in the authorities, supra—and all others so far as we are aware—is not only sustainable alone because they so declare, but it is also sustainable by both logic, reason and fairness. The licensee in such cases desires to occupy the licensor's facilities or premises in the accomplishment of his (licensee's) own purpose, wholly disconnected from any benefit or service to the licensor. If the latter consents to such an appropriation of his property or facilities for the sole benefit and accommodation of the licensee it would be unfair and unjust to burden him with the duty of seeing to it

412

that the premises or things so furnished are safe and free from dangerous defects. In such cases the law says to the licensee that he must take the premises or facilities as he finds them. In this case plaintiff had, then and there present upon the ground, the necessary ladders, as a part of his own equipment, to enable him to reach the cornice of the building which he was painting in carrying out and performing his contract with the owner of the building, and because, forsooth, he concluded to paint at a place and at a time when defendant's scaffold obstructed the use of his ladders at that place and at that time—creating the reason why he wished to become a licensee on plaintiff's scaffold—is no reason why liability should be adjudged in his favor against defendant, his licensor, who, according to the proof, had violated no obligated or assumed duty owing by him to plaintiff.

The court, therefore, properly sustained defendant's motion for a peremptory verdict in his favor; and the judgment is affirmed.